LODGED

DEC 1 3 2005

FILED

DEC 1 6 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____Deputy

Mark Clayton Choate, Esq., AK #8011070
CHOATE LAW FIRM LLC
424 N. Franklin Street
Telephone: (907) 586-4490
Facsimile: (907) 586-6633
Email: markcchoate@yahoo.com

Robert J. Bonsignore, *Pro Hac Vice*
BONSIGNORE & BREWER
23 Forest Street
Medford, MA 02155
Telephone:(781) 391-9400
Facsimile: (781) 391-9496
Email: Rbonsignore@aol.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

JOHN MCFARLIN, on behalf of himself )
and all others similarly situated, )
)
Plaintiffs, )
)
vs. )
)
WALMART STORES, INC. and SAM'S )
WEST INC., )
)
Defendants. )   Case No. 3 AN-05-0094 CV (JKS)
)

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff JOHN MCFARLIN ("Plaintiff"), on behalf of himself and all others

similarly situated, complains and alleges as follows:

## NATURE OF THIS ACTION

1.      This class action is brought against Wal-Mart Stores, Inc. (including all

30

Alaska Wal-Mart stores and Supercenters) and Sam's West, Inc. (collectively, "Wal-Mart" or "Defendants") for their knowing and systematic failure to pay their hourly employees for all time worked, including overtime hours, as well as Wal-Mart's failure to provide employees with accurate itemized wage statements as required by law.

2.    The allegations herein are supported by recently discovered evidence, including the videotaped admission of a Wal-Mart executive and Wal-Mart memoranda, showing that Wal-Mart deleted thousands of hours of time worked from employees' payroll records during the relevant time frame – a practice known in the industry as "time shaving" – and that Wal-Mart required hourly employees to work hours that were not recorded in payroll records – a practice known in the industry as working "off-the-clock." Plaintiff believes Wal-Mart perpetrated these practices in at least five different ways: (1) altering employee records to make it appear as if the employees' workdays ended one minute after their meal period concluded, effectively denying employees their pay for the three or four hours of work they performed after the meal period (*i.e.*, the "one-minute clock out" practice); (2) deleting overtime hours that employees worked in excess of forty hours (*i.e.*, "the 40 hour club"); (3) deleting employee punches so that employees would not be paid for an entire day or afternoon of work; (4) altering employee time records to make it appear as if employees took meal periods when in fact they did not, resulting in unauthorized deductions from the employees' paychecks; and (5) failing to pay employees for all reported time.

3.    Hourly employees were never aware, and could not have been aware, of these wrongful time shaving practices because Wal-Mart wrongfully and willfully concealed such facts from them. They could not have discovered these wrongful takings

until, at the earliest, sometime after April 4, 2004, when the New York Times published

an article in which Wal-Mart admitted for the first time that it had surreptitiously deleted

hours from employees' time records – in effect, stealing money from its own employees.

In addition, data recently produced by Defendants in similar cases in other jurisdictions

revealed that hourly employees are commonly required to work "off-the-clock."

4.    As a result of Wal-Mart's wrongful and illegal conduct, Plaintiff seeks

redress on behalf of all persons who are or who have been employed in Alaska by Wal-

Mart Stores, Inc. or Sam's West, Inc. as an hourly employee at any time on or after

January 1, 1997. Such redress includes payment of all money wrongfully withheld, plus

applicable liquidated damages and penalties, prejudgment interest, attorneys' fees and

costs. Plaintiff, on behalf of himself and the proposed Class members, also seeks

injunctive relief, disgorgement of all profits that Defendants wrongfully obtained as a

result of their failure to pay hourly employees for all regular and overtime hours worked,

and punitive damages sufficient to deter Defendants from continuing the practice of

stealing wages from hourly employees.

## JURISDICTION AND VENUE

5.    Venue is proper in the United States District Court for the District of

Alaska at Anchorage. Many of the acts, as well as the course of conduct charged herein,

occurred in Anchorage, Alaska.

6.    Defendants are within the jurisdiction of this Court. Defendants transact

tens of millions of dollars of business in the State of Alaska and operate stores throughout

Alaska. Thus, Defendants have obtained the benefits of the laws of the State of Alaska

and the Alaska retail and labor markets.

7.    This action was originally filed in Alaska state court and was removed by

Defendants on May 2, 2005 pursuant to 28 U.S.C. § 1332(d)(2), on the grounds that the

total claims of Plaintiff and Class members exceeds $5,000,000 and that there is diversity

of citizenship between Class members and Defendants, who are headquartered in

Arkansas.

## THE PARTIES

8.    Plaintiff John McFarlin is an Alaska resident who was an hourly employee

at the Wal-Mart Store in Wasilla, Alaska during the relevant time period. Plaintiff, like

all similarly situated class members, was subject to Wal-Mart's wrongful corporate

policy of time shaving, manipulation of time records, and requiring off-the-clock work.

9.    Defendant Wal-Mart Stores, Inc. is a Delaware corporation with its

headquarters in Bentonville, Arkansas. Wal-Mart Stores, Inc. transacts tens of millions

of dollars of business—if not more—within the State of Alaska. Wal-Mart Stores, Inc.

operates approximately seven retail stores in Alaska.

10.    Sam's West, Inc., a wholly-owned subsidiary of Defendant Wal-Mart

Stores, Inc., transacts millions of dollars of business—if not more—within the State of

Alaska. Sam's West, Inc. (hereinafter "Sam's Club") operates approximately three

Sam's Clubs in Alaska. Sam's Club is an operating segment of Wal-Mart Stores, Inc.

11.    At all times herein mentioned, each of the Defendants was the agent

and/or employee of each of the other Defendants and was at all times acting within the

purpose and scope of such agency and employment.

12.    At all times herein mentioned, the acts charged in this Complaint as

having been done by Defendants were committed, authorized, ordered, ratified, and/or

McFarlin v. Wal-Mart et al.                4
Case No. 3 AN-05-0094 CV (JKS)

done by Defendants' officers, agents, employees, and/or designated and/or authorized

representatives, while actively engaged in the management of the Defendants' businesses

and/or affairs and while acting with real and/or apparent authority of the Defendants.

## CLASS ACTION ALLEGATIONS

13.    Plaintiff brings this case as a class action pursuant to Federal Rule of Civil

Procedure 23 on behalf of himself and others similarly situated.  The Class that Plaintiff

seeks to represent is defined as follows:

> All current and former hourly-paid employees of Wal-Mart Stores, Inc. in
> the State of Alaska and all current and former hourly-paid employees of
> Sam's West, Inc. in the State of Alaska from January 1, 1997 to the
> present whom Defendants failed to compensate for all hours worked and
> who were not provided accurate itemized wage statements, excluding: 1)
> all employees who hold or held salaried positions; 2) employees whose
> jobs are legally exempt from entitlement to overtime pay; and 3) all
> personnel managers (the "Class").

14.    This action is brought and may be properly maintained as a class action

pursuant to Federal Rule of Civil Procedure 23 and Alaska Statutes 23.10.110 because

there is a well-defined community of interest in the litigation and the proposed class is

easily ascertainable.

a.    Numerosity:  Plaintiff believes there are thousands of potential Class

members. Thus, the members of the Class are so numerous that joinder of all members is

impractical.

b.    Commonality:  There are questions of law and fact common to the claims

of Plaintiff and the Class that predominate over any questions that affect only individual

members of the Class.  These common questions of law and fact include, but are not

limited to:

i.    Whether Wal-Mart violated the Alaska Wage and Hour Act

("AWHA"), Alaska Statutes 23.10.050 through 23.10.150, by failing to pay employees at least the minimum wage for all time worked;

      ii.     Whether Wal-Mart violated the AWHA by failing to pay employees for earned overtime;

      iii.     Whether Wal-Mart violated the AWHA, specifically AS 23.10.60, AS 23.10.065, AS 23.10.100 and AS 23.10.135, as well as AS 23.05.080, as a result of its time shaving practices and/or its failure to pay Plaintiff and proposed Class members for all hours worked;

      iv.     Whether Defendants violated AS 23.05.140 by failing to pay compensation owed to Plaintiff and all other members of the Class whose employment with Defendants was terminated.

      v.     Whether Defendants' violation of statutes requiring payment of at least minimum wage and earned overtime was willful;

      vi     Whether Wal-Mart realized profits and was unjustly enriched from the wrongful retention of compensation owed to Plaintiff and the Class for work performed;

      vii     Whether Wal-Mart breached its contract with Plaintiff and Class members by failing to pay all compensation owed to them under their employment contract;

      viii.     Whether Wal-Mart breached the covenant of good faith and fair dealing by failing to account accurately and pay for all the hours worked by Plaintiff and Class members;

      ix.     Whether Wal-Mart is liable for conversion as a result of tampering

McFarlin v. Wal-Mart et al.
Case No. 3 AN-05-0094 CV (JKS)

6

with the payroll records of Plaintiff and Class members for the improper purpose of reducing compensation by eliminating some of the time recorded;

    x.    Whether Defendants acted toward the Class with malice and reckless disregard for the rights of the class members;

    xi.    Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief; and

    xii.    Whether Wal-Mart's business records and electronic databases contain the data from which Plaintiff can objectively establish on a class-wide basis: (i) Wal-Mart's time shaving practices; (ii) the amount of time improperly deleted; (iii) the employees' scheduled hours (to determine the amount of time for which the employees should have been paid); (iv) whether employees were ever paid for deleted time; (v) the date on which an employee stopped working for Wal-Mart; and (vi) time worked "off-the-clock."

    c.    Typicality: Plaintiff's claims are typical of the claims of the members of the Class. Like the proposed Class members, Plaintiff sustained damages and was harmed as a result of Defendants' common course of conduct that violated Alaska law and policy, including the AWHA, breached the employment contract and the covenant of good faith and fair dealing between Plaintiff and Wal-Mart, unilaterally altered the payroll records of Plaintiff to convert wages earned by the Plaintiff to Defendants' own use, and thereby was unjustly enriched, as herein described.

    d.    Adequacy of Representation: Plaintiff will fairly and adequately protect the interests of the Class members. The interests of Plaintiff are coincident with, and not antagonistic to, those of the members of the Class. Plaintiff has retained counsel

McFarlin v. Wal-Mart et al.
Case No. 3 AN-05-0094 CV (JKS)

7

competent and experienced in complex class action litigation.

e.    Superiority of Class Action: Class action treatment is superior to any

alternatives to ensure the fair and efficient adjudication of the rights of Class members in

regard to the controversy alleged herein. Each Class Member has been damaged and is

entitled to recovery as a result of Defendants' illegal and wrongful policies and/or

practices of failing to pay earned wages and to provide accurate itemized wage

statements as required by law. The amounts of compensation that Defendants wrongfully

withheld from each Class member tended to be small, making individual lawsuits

financially impractical and making class treatment the only feasible means of redressing

the wrongs suffered by Plaintiff and Class members. Class action treatment will,

therefore, allow those similarly situated persons to prosecute their common claims in a

single forum simultaneously, efficiently, and without the duplication of effort and

expense that numerous individual actions would entail. The Class members are readily

identifiable from Defendants' payroll records, time records, and electronic databases.

15.    The wrongful practices of Wal-Mart as alleged herein are generally

applicable to the entire Class, thereby making final injunctive relief and disgorgement of

ill-gotten gains appropriate with respect to the Class as a whole. Without a class action,

Wal-Mart will retain the benefit of its wrongdoing and will continue a course of action

that will result in further damages to the Class and to future hourly employees of Wal-

Mart. Prosecution of separate actions by individual members of the Class creates the risk

of inconsistent or varying adjudications of the issues presented herein, which, in turn,

would establish incompatible standards of conduct for Defendants.

16.    Wal-Mart's wrongful and unlawful conduct has been widespread,

McFarlin v. Wal-Mart et al.                    8
Case No. 3 AN-05-0094 CV (JKS)

recurring and uniform at its Alaska stores and at its stores across the nation. Wal-Mart

knew and intended, or should have known, that its hourly employees, including Plaintiff

and the Class, were performing work on its behalf that was not compensated as required

by law. In many instances, the amounts stolen by Defendants from individual Class

members was small, but in the aggregate the compensation wrongfully retained by

Defendants was substantial, making this case particularly well suited to treatment as a

class action. Absent judgment in favor of the Class, with liquidated damages pursuant to

AS 23.10.110, penalties pursuant to AS 23.05.140, and the deterrent effect of

disgorgement and punitive damages, Wal-Mart will likely continue its wrongdoing

resulting in further damage to its hourly workers.

## FACTUAL ALLEGATIONS

## PROGRESSIVE AND CONTINUING WRONGS

17.    Wal-Mart generated approximately $256 billion in revenues for the fiscal

year 2004, an increase of 11.6% from the previous year. Net income from continuing

operations during the same period rose 13.3% to $8.9 billion. At last count, Wal-Mart had

over 15 million employees nationwide.

18.    One of Wal-Mart's largest expenses is the payroll of its hourly-paid

employees. Although Wal-Mart claims in its uniform employee handbook that it

"respects the individual" and welcomes employees into its "family," Wal-Mart unfairly

increases profitability by underpaying its hourly-paid employees. One such method for

increasing profitability, since at least January 1, 1997, is the creation and implementation

of a system that fails to properly compensate hourly-paid employees in Alaska and in

other states for all hours worked.

19.    The work performed by Plaintiff and Class members for which they were

not properly compensated was for the benefit of Wal-Mart and was not de minimus or

incidental.

20.    Wal-Mart has adopted, and is using, wrongful and unfair business

practices to minimize hourly-paid employees' compensation and increase profits. Some

of these wrongful and unfair business practices include failing to pay hourly-paid

employees for all hours worked, understaffing Defendants' stores, and manipulating time

and wage records to reduce the amounts paid to hourly-paid employees below the wages

actually earned, due and owing.

21.    Wal-Mart directed its store managerial personnel, and/or knew or should

have known that its store managerial personnel routinely deleted time covertly from

hourly employees' payroll records by: (1) an unlawful one-minute clock-out practice; (2)

altering time records to make it appear as if employees took meal periods of 30 or 60

minutes in length when in fact they did not, thereby deducting time worked from

employees' paychecks without proper written authorization from the employees; (3)

deleting overtime hours from payroll and time records (a/k/a "The 40 Hour Club"); (4)

deleting employee punches so that employees would not be paid for periods of work,

sometimes as much as an entire day or afternoon of work; and (5) various other unlawful

means.

22.    According to Wal-Mart, one of its largest and most controllable expenses

is the payroll of its hourly employees. Although Wal-Mart claims in its uniform

employee handbook that it "respects the individual," and welcomes employees into its

"family," Wal-Mart secretly profits at the expense of those unknowing employees by

cheating them out of earned wages. This is accomplished in a variety of ways, including, but not limited to: altering employee time records; failing to pay employees for all time worked; shaving time worked from payroll; and requiring and/or pressuring employees to work off-the-clock (*i.e.*, not clocked into the time keeping system).

23.     Beginning at a date unknown to Plaintiff, but at least as early as January 1, 1997, Defendants committed, and continue to commit, those wrongs against its hourly paid employees in Alaska

24.     Wal-Mart's nefarious policy of failing to pay its hourly employees for all time worked is, in part, facilitated through its corporate culture. As noted above, Wal-Mart tries to convince its employees that they are part of its "family," where they will be rewarded for being a team player and following Sam Walton's rules. Conversely, hourly employees are consistently coached (*i.e*, formally reprimanded) and threatened with termination for committing the slightest infractions of any and all corporate rules. Thus, hourly employees quickly learn that in order to keep their jobs they must appear to adhere strictly to corporate mandates.

25.     Having instructed and conditioned its employees to be team players or lose their jobs, Wal-Mart gives them work assignments that typically cannot be completed within their scheduled hours. Wal-Mart also routinely requests its employees to do work when not clocked in to the time-keeping system, such as when they are on breaks, and/or clocked out for the day.

26.     Wal-Mart's Store, District, Club/General, and Regional Managers in the State of Alaska have financial incentives to suppress store expenses, the largest of which is employee payroll. Importantly, the Store, District, Club/General and Regional

Managers' financial compensation and bonuses are directly tied to their ability to reduce employee payroll. Unfortunately for hourly employees, payroll is frequently reduced by understaffing stores, failing to pay wages (including overtime), and tampering with employee records to delete hours worked; all of which result in substantial nonpayment of wages to Wal-Mart's hourly employees.

27.     Wal-Mart's corporate office sets staffing and scheduling for each of its stores. Throughout the Class Period, Wal-Mart has grossly understaffed its stores and implemented a strict no overtime policy in order to reduce payroll expenses. Notwithstanding that the stores are understaffed and employees cannot work overtime, Wal-Mart demands that each store increase its sales and profits each year. As Wal-Mart well knows, stores cannot increase sales and profits without adequate staffing and/or overtime unless employees work without pay. Moreover, although Wal-Mart was and is aware that employees are routinely working without pay in order to meet its mandatory profitability requirements, it has done nothing to eliminate that practice and/or compensate its employees for all time worked.

28.     Wal-Mart cynically and shrewdly attempts to hide behind its written policy that purports to forbid those unlawful labor practices while at the same time it maintains conditions that directly result in those unlawful practices. If employees make an issue of not being paid for time not recorded in the payroll system, or not being allowed to take their rest and meal breaks, Wal-Mart feigns "ignorance" and "coaches" said employees. Behind any coaching is the veiled threat of termination. Wal-Mart unfairly, fraudulently, and unlawfully uses its no off-the-clock policy as a two edged sword against its hourly paid employees. Wal-Mart uses its written policies to shield



itself from paying for off-the-clock work and overtime and then terminates employees who complain about having to do such work.

29.     Wal-Mart knew or should have known that its hourly employees were working off-the-clock by virtue of the fact that:  (a) such work was recorded in its business records and electronic databases; (b) its managers directed, pressured and/or encouraged employees to work off-the-clock; (c) it systematically understaffed its stores in order to meet arbitrary corporate profitability objectives; and (d) it regularly tracked and studied employee hours worked and wages paid.

30.     The earliest date any class member could possibly have learned of potential time shaving practices at Wal-Mart was after publication of an article in the New York Times in April 2004.  Upon information and belief, by August of 2004, plaintiffs in like class action litigation in other states had obtained databases from Wal-Mart that allowed them to confirm the existence of Wal-Mart's time shaving practices. Although Wal-Mart's routine business records, in hardcopy and electronic media, clearly evidence its wrongdoing, hourly employees could not have discovered Wal-Mart's time shaving practices both because they did not have access to Wal-Mart's business records and databases and because such data can only be deciphered/analyzed by a computer/statistical expert.  The business records and databases produced in other states remain under protective order and is unavailable to class members within this state.  In addition, Wal-Mart continues to officially deny allegations that it cheats its hourly employees out of earned wages.

31.     In addition to finding thousands of instances where Wal-Mart improperly altered its payroll records to steal wages from its hourly employees, plaintiffs in like

litigation also discovered that Wal-Mart failed to pay its employees for large amounts of earned wages that were recorded in its business records and database but were not recorded in Wal-Mart's time-keeping system. Once again, both the discovery and extent of Wal-Mart's misconduct can only be identified by a computer/statistical expert.

## FRAUDULENT CONCEALMENT

32.     On April 4, 2004, the New York Times published an article in which Wal-Mart admitted publicly for the first time that it had surreptitiously deleted hours from employees' time records—in effect, stealing money from its own employees. See Exhibit A attached hereto. The practice, known as "time shaving," is "easily done and hard to detect," according to the article. It was reported that Wal-Mart also admitted that as early as April 2003, it had created and circulated to all of its United States store managerial personnel a videotape and a newly-revised "payroll integrity" policy memorandum discussing this unlawful practice. *Id.*

33.     Prior to the New York Times article, Wal-Mart concealed and Plaintiff and the Class had no knowledge or reasonable basis to know of Wal-Mart's unlawful time shaving practice, the existence of the payroll videotape, or the revised "payroll integrity" policy memorandum. Indeed, there was no confirmation of the existence of the practices discussed in that article until sometime after July of 2004, when, in like litigation, Wal-Mart produced for the first time evidence exposing its misconduct.

34.     Upon information and belief, in July 2004, Wal-Mart produced a videotape to plaintiffs in like litigation who had entered into a protective order. Importantly, that videotape revealed that in addition to the "one-minute clock out" practice, Wal-Mart engaged in another form of time shaving by which Wal-Mart deleted

certain employee punches so that the affected employees would not be paid for an entire

afternoon of work. As Wal-Mart admitted on the videotape, by deleting the "final punch

... that's four hours [the employee] wasn't paid for."

35.    Upon information and belief, sometime thereafter, Wal-Mart produced

another videotape to plaintiffs in like litigation who had entered into a protective order.

That videotape included a speech by another of Wal-Mart's top executives, Don Swann,

to personnel managers at Wal-Mart's 2003 Annual Shareholders' Meeting. In the

videotape, Mr. Swann acknowledges yet another widespread time shaving practice at

Wal-Mart—namely, deleting overtime so that employees did not earn over 40 hours ("the

40 Hour Club")—and explains that store managers felt pressured to practice it.

36.    Upon information and belief, around the same time, on October 26, 2004,

an April 2003 training memorandum concerning the widespread "one-minute clock out"

practice that was referenced in the April 2004 New York Times article was produced to

plaintiffs in like litigation This training memorandum was sent to all United States

personnel managers. Specifically, all Wal-Mart and Sam's Club personnel managers were

now cautioned that:

> Wal-Mart must pay Associates for all the time they work. Wal-Mart is
> also responsible for maintaining records that accurately document the time
> worked by Associates.
>
> When an Associate fails to clock in and out correctly, leaving an odd
> number of punches, Wal-Mart is left with an incomplete time record. In
> order to close out the daily payroll, a decision must be made as to how
> many hours the Associate probably worked based on the records that are
> available at that time. The only records available at this time are the
> punch, which shows when the Associate reported in to work, and the shift
> schedule, which shows what the Associate was expected to work.
>
> Based solely on these records, the most reasonable conclusion is that the
> Associate worked the full shift. In contrast, there are no records to support

the assumption that the Associate either did not work after clocking in or
that the Associate left after one minute. Accordingly, eliminating the
punch or advancing the time record one click is not an appropriate method
to handle the incomplete time record.

37.     Until publication of the April 2004 New York Times article, at the earliest,

Plaintiff and similarly situated Class members did not know and could not have

reasonably known that Wal-Mart had a one-minute clock out practice. In fact, the New

York Times article identified for the first time the method by which Wal-Mart

systematically deleted time worked from its records. Prior to that publication, and for a

reasonable period thereafter, Plaintiff and Class members were unaware that Wal-Mart

had a company-wide practice of regularly deleting several hours of pay from

unsuspecting hourly employees by surreptitiously clocking them out one minute after

they had returned from a break, by deleting certain clock-in punches, or by adding meal

periods without employees' written authorization, nor did Plaintiff and similarly situated

Class members have any way of discovering these time shaving methodologies. The

evidence of such wrongful conduct was both physically unavailable to Plaintiff and Class

members and intellectually unavailable, in that Plaintiff and Class members would have

required the assistance of an expert to analyze Wal-Mart's records and data to find

evidence of these time shaving methodologies.

38.     By contrast, beginning at least as early as January 1, 1997, Wal-Mart

knew the facts concerning its wrongful time shaving practices and its resultant failure to

pay hourly employees for all hours worked, yet Wal-Mart willfully concealed those facts

from Plaintiff and Class members, who did not discover them and could not reasonably

have discovered them until the aforesaid article appeared in the New York Times on

April 4, 2004, with the public admission by Wal-Mart that it had systematically engaged

in various improper time shaving practices that cheated employees out of their earned wages.

39.    Although Plaintiff exercised due diligence during the Class Period and has diligently sought to protect himself from unlawful practices, Plaintiff could not have discovered the improper and illegal time shaving practices by the exercise of due diligence until shortly before the filing of this Complaint because Wal-Mart affirmatively used deceptive and willful practices and techniques to avoid detection and affirmatively conceal such practices. As an employer in the State of Alaska, Wal-Mart had a duty under the AWHA to maintain accurate records of each employee's time worked and wages earned, and Plaintiff reasonably relied upon Wal-Mart to keep accurate records and accurately pay him the wages he earned for time worked.

40.    These practices of secrecy and concealment included, but were not limited to, a materially false and misleading public relations campaign that misrepresented Wal-Mart's practices toward its employees, the dissemination of false information through press releases, public statements by Wal-Mart officers denying such practices, unqualified denials of such practices in like litigation, and a demand for retraction of the New York Times article.

41.    Wal-Mart never revealed the existence of its time shaving practices and one-minute clock out practice in its employee handbook, corporate policies or in any standardized orientation for hourly employees. Moreover, when confronted with evidence of its wrongdoing, Wal-Mart has actively sought to conceal its misconduct by mounting an expensive and deceptive public relations campaign wherein it repeatedly denied that it failed to compensate employees for wages earned. For example:

a.  In a statement signed by H. Lee Scott, President and Chief Executive
    Officer of Wal-Mart, and posted on Wal-Mart's website, Mr. Scott said,
    "For too long, others have had free rein to say things about our company
    that just aren't true." The website specifically addresses allegations of off-
    the-clock work by saying, "Although we do not want even one minute
    worked without pay, keep in mind that anyone can file a lawsuit, and most
    of these lawsuits have not yet been decided." The website protests Wal-
    Mart's innocence by asserting that "any manager who requires or even
    tolerates 'off-the-clock' work would be violating [company] policy and
    labor laws. As a result, he or she would be disciplined, and possibly even
    fired, depending on the situation."

b.  On *Good Morning America*, Mr. Scott responded to Charles Gibson's
    inquiry regarding "off-the-clock" claims by stating, "Our policy is that we
    pay everyone for every hour worked. And if a manager allows someone
    or requires someone to work off the clock, they're terminated. I think
    there's a difference between what you're sued for and what you're found
    guilty of."

c.  On the Fox New program *Your World with Neil Cavuto*, Mr. Scott denied
    that employees had their hours deleted by stating, "It's going to take Lee
    Scott to be on TV to say, every associate knows, because right by the time
    clock is a big sign that says if your manager does something with your pay
    that is inappropriate, asks you to work hours that they're not going to pay
    you for, you call this number and we'll fix it. People aren't going to talk
    about it except me and that is [communicated in] the visits I have
    personally had in our meetings with store managers saying, if you do these
    things you will be terminated, period."

42.    As a result of the knowing and willful fraudulent concealment of the

illegal time shaving practices, Plaintiff asserts the tolling of the applicable statute of

limitations with respect to any claims and rights of action by Plaintiff and the members of

the Class.

## FIRST CAUSE OF ACTION

### (Violation of Alaska Wage and Hour Act: AS 23.10.050 – AS 23.10.150)

43    Plaintiff re-alleges and incorporates by reference each and every allegation

set forth in the preceding paragraphs.

44.    The claims of Plaintiff and Class members for this cause of action run

from the beginning of the Class period, January 1, 1997, to the present.

45.     As alleged herein, Wal-Mart failed to properly compensate Plaintiff and Class members for off-the-clock work, overtime, and hours that were subsequently deleted by managers without authorization of the affected employees.

46      Prior to 2003, the AWHA, AS 23.10.065, provided that the minimum wage in Alaska was to be "not less than 50 cents an hour greater than the prevailing federal minimum wage law" to be adjusted annually.  Effective January 1, 2003, AS 23.10.065 provided that the minimum wage in Alaska was set at "a rate of not less than $7.15 an hour for hours worked in a pay period."  Wal-Mart violated AS 23.10.065 by failing to pay Plaintiff and Class members any compensation for some hours worked.  By its failure to pay the minimum wage required by law, Wal-Mart violated the AWHA and is liable to Plaintiff and Class members for unpaid wages, statutory liquidated damages, attorneys' fees and costs.

47      As alleged herein, Wal-Mart failed to keep accurate records of the hours worked by Plaintiff and Class members, and Wal-Mart falsified such records, all in violation of AS 23.10.100 and AS 23.10.135, as well as AS 23.05.080.

48.     As alleged herein, Wal-Mart required Plaintiff and Class members to work in excess of forty hours per week and/or eight hours per day, and failed to pay overtime for such labor, in violation of the AWHA, including AS 23.10.060.

49.     Pursuant to the AWHA, including AS 23.10.110, Plaintiff brings this action to recover earned but unpaid minimum wages and overtime compensation that Defendants willfully withheld from him and Class members, including prejudgment interest thereon, plus liquidated damages, attorneys' fees and costs.

50.     The amounts that Wal-Mart wrongfully withheld from the compensation owed to Plaintiff and Class members continued to be withheld after the termination of Plaintiff's employment and the employment of those Class members whose employment with Wal-Mart has terminated.  By retaining such moneys owed to Plaintiff and terminated Class members, Defendants violated AS 23.05.140, which requires that compensation owed to an employee be paid promptly upon termination.  Pursuant to AS 23.05.140(d), Plaintiff and terminated Class members are entitled to an award of penalties because Defendants willfully withheld compensation owed to them upon termination

## SECOND CAUSE OF ACTION

### (Conversion)

51      Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

52      The claims of Plaintiff and Class members for this cause of action run from the beginning of the Class period, January 1, 1997, to the present.

53      As alleged herein, Plaintiff and each Class member created a record in Defendants' electronic payroll system of each hour or fraction thereof that he or she worked and was immediately entitled to compensation for the time recorded, payable at the next regular pay period or upon termination, whichever occurred first.  Plaintiff and each Class member had a possessory interest in each payroll record so created and in the compensation that Wal-Mart was required to pay for those recorded hours of work. Defendants had no right to delete the time recorded in the payroll records of hourly employees without the express consent of the affected employee, yet Defendants secretly

deleted time recorded by Plaintiff and Class members for the wrongful purpose falsifying payroll records in order to prevent those employees from receiving the compensation they had already earned.

54.     As Plaintiff and Class members performed work for Wal-Mart and recorded their hours, they fulfilled their employment contract with Wal-Mart and were entitled to receive the agreed wages for those hours at the next pay period or upon termination, whichever occurred first, as well as accrued benefits related to hours worked. The hours recorded by Plaintiff and Class members were their property and represented the right to receive compensation for those hours. Wal-Mart had no right to unilaterally alter its employees' payroll records, without disclosure to the affected employees and without their consent, and such tampering with payroll records was contrary to Wal-Mart's purported company policy. Nonetheless, Wal-Mart intentionally altered the data in the payroll system to eradicate hours recorded by Plaintiff and Class members. Wal-Mart converted Plaintiff's and Class members' records of labor and compensation owed for that labor to its own use and thereby prevented Plaintiff and Class members from receiving the wages and benefits they earned.

55     Wal-Mart converted Plaintiff's and Class members' property by deleting recorded hours from its timekeeping system without proper written authorization from Plaintiff and members of the Class, all with the intention on the part of Wal-Mart that Plaintiff and the Class would not be compensated for all time worked.

56.     Wal-Mart thereafter used the fraudulently altered payroll records to underpay Plaintiff and the Class, wrongfully retaining its employees' earned compensation to its own use, and the conversion was complete. Compensable hours of

labor recorded by Plaintiff and Class members were stolen by Wal-Mart, with the result that Plaintiff and Class members were deprived of the wages and benefits they would otherwise have been paid.

57.    The monetary value and/or amount of wages and benefits converted by Wal-Mart from Plaintiff and Class members is specific, certain, and capable of identification based upon an analysis of the number of uncompensated hours worked and the time deleted from the timekeeping system.

58    Throughout the Class Period, Wal-Mart had actual knowledge that it wrongfully and/or unlawfully altered and withheld the rightful property of its hourly employees and, further, its employee victims had no knowledge that Wal-Mart had deleted their recorded hours or wrongfully withheld their wages and benefits  Plaintiff and Class members could not have discovered the alteration of their payroll records and theft of their compensable time records without access to Wal-Mart's payroll and sales databases and other business records, including Time Adjustment Requests, coupled with the ability to analyze millions of pieces of data, something that only became possible recently through like litigation in other jurisdictions.

59.    The wrong done to the Plaintiff and Class members by the Defendants was attended by fraudulent, malicious, intentional, willful, wanton and/or reckless conduct, evidencing a conscious disregard for the rights of the Class members.  In altering employees' payroll records to delete compensable hours, and thereby falsifying the payroll records of Plaintiff and Class members in order to steal earned wages and benefits from its employees, Wal-Mart acted despicably, with oppression and/or conscious disregard for the rights of Plaintiff and the Class members.  The statutory and contractual

remedies available to Plaintiff and the Class are insufficient to deter Wal-Mart from

cheating its employees out of earned wages and benefits in the future. Only an award of

punitive damages could be sufficient to deter such wrongful and intentional acts, and the

conduct of Wal-Mart in stealing labor from its employees amply merits an award of

punitive damages.

60     Wal-Mart should be enjoined from its practice of unilaterally and covertly

altering payroll records. If Wal-Mart is not so enjoined, countless present and future

hourly employees of Wal-Mart in the State of Alaska will be cheated out of their

earnings.

## THIRD CAUSE OF ACTION

### (Unjust Enrichment)

61     Plaintiff re-alleges and incorporates by reference each and every allegation

set forth in the preceding paragraphs.

62.    By working for Wal-Mart without appropriate pay for off-the-clock work,

and missed rest and meal breaks, Plaintiff and Class members conferred a substantial

benefit on Wal-Mart. Wal-Mart's practice of requiring and obtaining uncompensated

labor, as well as its practice of altering payroll records to delete hours worked, massively

reduced hourly wage expenses and enabled Wal-Mart to use money wrongfully withheld

from its employees to generate additional profits and increase profitability.

63     Wal-Mart is a publicly traded company that thrives on increasing its

profitability and increasing returns to its shareholders. Wal-Mart benefited greatly at the

expense of its employees, including Plaintiff and Class members, whose unpaid wages

were diverted to increase Wal-Mart's profitability rather than being paid to the employees

who earned them  Indeed, without Wal-Mart's clandestine wage abuse campaign, it

would not be able to operate nearly as profitably.

64.     Wal-Mart wrongfully retained wages earned by Plaintiff and the Class and

used such ill-gotten gains to generate further profits.  Under these circumstances, equity

requires that Wal-Mart be ordered to disgorge all such profits to, or for the benefit of,

Plaintiff and Class members.

65.     The hours that Plaintiff and Class members worked off-the-clock and

through rest and meal breaks were at the direction and behest of Wal-Mart.  Plaintiff and

Class members did not perform this work voluntarily but with the hope of receiving

compensation and/or the fear of being discharged for refusing to work as requested.

Plaintiff and Class members provided a great deal of off-the-clock labor to Wal-Mart, at

no cost to Wal-Mart.  Wal-Mart demanded and accepted this benefit to its profitability

and never paid Plaintiff and the Class for the labor so provided.

66     The compensation earned by Plaintiff and Class members that was

wrongfully retained by Wal-Mart unjustly enriched Wal-Mart, at the expense of its

hourly employees.  Wal-Mart knew and intended that it would increase its profits by

retaining Plaintiff's and Class members' property.  By wrongfully retaining the wages of

Plaintiff and Class members for its own use, by deleting overtime and regular hours

worked by clandestinely altering payroll records, and by requiring off-the-clock work,

Wal-Mart acted with malice, fraud, oppression, and/or conscious disregard for the rights

of Plaintiff and Class members.

67     It would be inequitable for Defendants to continue to retain the profits

obtained from wrongfully withholding money earned by Plaintiff and Class members,

and such profits should be disgorged to, or for the benefit of, Plaintiff and the Class

## FOURTH CAUSE OF ACTION

### (Breach of Contract)

68      Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

69.     Wal-Mart expressly agreed, orally and in writing, to pay Plaintiff and Class members a specific amount of compensation for each hour worked, in compliance with applicable state law, including the AWHA. At the time Plaintiff and Class members were hired, Wal-Mart provided them with a copy of a uniform employee handbook, to which they were directed to refer if they had any questions concerning their employment.

70.     The Wal-Mart employee handbook is a standardized, uniform document used by Wal-Mart nationwide, including in Alaska, which is presented to employees on a take-it-or-leave-it basis. In addition, the employee handbook is presented to and reviewed with all hourly employees during Wal-Mart's standardized orientation for new employees.

71.     Throughout the employee handbook, Wal-Mart confirmed its obligation to pay its hourly employees for all time worked.

72.     Plaintiff and each Class member performed his or her duties under the Wal-Mart employment agreement and was entitled to receive the agreed upon compensation.

73.     Wal-Mart breached its obligation under the employment agreement with Plaintiff and Class members by failing to pay the full amount of compensation earned for each hour worked.

McFarlin v. Wal-Mart et al.                25
Case No. 3 AN-05-0094 CV (JKS)

74.     The breach of contract by Wal-Mart caused financial harm to Plaintiff and each Class member.

75.     As a consequence, Wal-Mart should be required to pay Plaintiff and each Class member all amounts owing under their employment contract, plus interest at the legal rate, calculated from the date that such wages were originally due.

## FIFTH CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

76     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

77.     Into every contract the law implies a covenant of good faith and fair dealing, requiring that each party refrain from any act, extraneous to the provisions of the contract, that would deprive the other party of the benefits of the contract.  In addition, Alaska law imposes on Wal-Mart, as an employer, a duty to maintain and provide to each employee an accurate accounting of all hours worked and wages earned by such employee.

78     Pursuant to the covenant of good faith and fair dealing implied into the employment contract between Wal-Mart and each Class member, Wal-Mart was obligated to account accurately for the hours worked by each employee and to pay the agreed upon compensation for all time worked, as specified in the employment agreement and applicable statutes, including the AWHA

79.     Wal-Mart breached the covenant of good faith and fair dealing by manipulating the time recorded in the payroll records of Plaintiff and Class members, so that the number of hours worked and wages payable were unilaterally reduced.  Wal-Mart knew

that such deductions were not fair, justified or permissible under the employment contract or the AWHA.

80.     Wal-Mart also breached the covenant of good faith and fair dealing by forcing Plaintiff and Class members to work off-the-clock without the compensation promised in the employment agreement.

81.     As a proximate result of Wal-Mart's breach of the covenant of good faith and fair dealing, Plaintiff and Class members suffered substantial financial damage, in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### (Injunctive and Declaratory Relief)

82.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

83.     As a result of Wal-Mart's wrongful conduct as described herein, Plaintiff and the Class have suffered and, unless abated, the Class and future hourly employees of Wal-Mart will continue to suffer severe and irreparable economic harm and other injuries.

84.     Plaintiff and the Class have no adequate remedy at law to prevent future wrongful conduct in the absence of injunctive relief.

85.     Accordingly, Plaintiff and the Class respectfully request that this Court enter a permanent injunction ordering Wal-Mart to cease and desist from its wrongful policy and practice of altering employee time records without explicit notice thereof to the affected employee and consent thereto by the employee.

86. Plaintiff and the Class also respectfully request that this Court issue a declaratory order declaring that Wal-Mart has engaged in unlawful conduct that violated Alaska law and policy.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for judgment against Defendants as follows:

1. An Order that this action may proceed and be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

2. An Order finding that all applicable statutes of limitations were tolled until April 4, 2004, because Plaintiff and Class members could not have discovered the facts supporting their causes of action prior to that date;

3. An Order enjoining Defendants from unilaterally changing or otherwise tampering with payroll records of hourly employees without explicitly informing the affected employee of the change and obtaining the employee's consent thereto;

4. Payment with prejudgment interest according to proof of wages owed to Plaintiff and Class members;

5. Liquidated damages as provided by AS 23.10.110;

6. As to Plaintiff and all class members whose employment with Defendants was terminated, payment of penalties for withholding compensation owed to such persons, pursuant to AS 23.05.140;

7. An award to Plaintiff and the Class members of attorneys' fees and costs pursuant to AS 23.10.110 and/or other applicable statutes;

8. An Order compelling Defendants to disgorge to, or for the benefit of, the

Class all profits obtained directly or indirectly from the wrongful withholding of

compensation earned by Plaintiff and members of the Class;

     9.    Exemplary and/or punitive damages in an amount calculated to deter

future illegal conduct;

     10.    A declaration by the Court that the Defendants engaged in unlawful acts

and practices; and

     11    All other relief as this Court may deem proper.

///

///

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury for all issues so triable.

DATED:   **12-01-05**      By_____

                      Mark Clayton Choate, # 8011070
                      CHOATE LAW FIRM LLC
                      Attorneys for Plaintiff

                      Robert J. Bonsignore
                      BONSIGNORE & BREWER
                      Attorneys for Plaintiff