Mark Clayton Choate, Esq., AK #8011070
CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, Alaska 99801
Telephone: (907) 586-4490
Facsimile:  (907) 586-6633
Email: markcchoate@yahoo.com

Robert J. Bonsignore, *Pro Hac Vice*
BONSIGNORE & BREWER
23 Forest Street
Medford, Massachusetts 02155
Telephone: (781) 391-9400
Email: Rbonsignore@aol.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE  DISTRICT OF ALASKA

| | |
|---|---|
| JOHN MCFARLIN, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) |
| WALMART STORES, INC. and SAM'S WEST INC., | ) ) ) ) |
| Defendants. | ) ) Case No. 3 AN-05-0094 CV (JKS) ) |

## PLAINTIFF'S OPPOSITION
## TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL
## OF PLAINTIFF'S FIRST AMENDED COMPLAINT

i

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND PROCEDUREAL BACKGROUND………….. 2

II.    NO CLAIMS OR ALLEGATIONS SHOULD BE DISMISSED………...2

    A.  The Claim of Conversion is Well Founded……………………………2

          1.  Electronic Data May Be the Subject of a Conversion Claim...3

          2.  Defendants' Authority Does Not Warrant Dismissal………...5

    B.  The Claim of Unjust Enrichment is Not Redundant……………………8

    C.  Terms of the Employment Contract Are Stated in the Employee Handbook………………………………………………………………9

          1.  The Disclaimer Did Not Destroy Employees Contract Rights.11

          2.  Enforcement of the Disclaimer Would Be Unconscionable….13

          3.  Defendants' Authority Is Inapposite…………………………13

    D.  The Alleged Record Keeping Violation is Relevant……………………14

III.    CONCLUSION…………………………………………………………..15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004)……………………………… 2

*Alaska Continental, Inc. v. Trickey*, 933 P.2d 528 (Alaska, 1997)…………………..6

*Alaska International Industries, Inc. v. Musarra*, 602 P.2d 1240,
1248 (Alaska, 1979)………………………………………………………………………………14

*Alyeska Pipeline Service Co. v. O'Kelley*, 645 P.2d 767, 774 (Alaska, 1982)……….3

*Barios v. Brooks Range Supply, Inc.*, 26 P.3d 1082, 1086 (Alaska, 2001)………......15

*Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988)………………2

*Burgess Construction Co. v. State*, 614 P.2d 1380, 1383 (Alaska, 1980)……………13

*DIRECTV, Inc. v. Pahnke*, 2005 WL 3453823 (E.D.Cal., 2005)……………………..3

*Farmers Insurance Exchange v. Zerin,* 53 Cal.App.4th 445, 451-452 (1997)……….8

*Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200 (Del., 1988) …………………7, 8

*Granberry v. Islay Investments*, 9 Cal.4th 738, 760,
889 P.2d 970, 984 (Cal., 1995). ……………………………………………………………9

*Jones v. Central Peninsula General Hospital,* 779 P.2d 783 (Alaska, 1989)………11, 12

*K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702 (Alaska, 2003)……………6

*Kremen v. Cohen*, 337 F.3d 1024 (2003)…………………………………………4, 7

*McCain v. P.A. Partners Ltd.,* 445 So.2d 271, 272 (Ala., 1984) ……………………8

*McKibben v. Mohawk Oil Co., Ltd.*, 667 P.2d 1223, 1228-1229 (Alaska 1983)…….5

*Moreau v. Air France,* 356 F.3d 942 (9th Cir. 2004)………………………………..12, 13

*MTC Electronic Technologies Co., Ltd. v. Leung*, 889 F.Supp. 396 (C.D.Cal., 1995)..4

*OK Lumber Co., Inc. v. Alaska R.R. Corp.*, 123 P.3d 1076, 1081, ftn.
17 (Alaska, 2005)……………………………………………………………….......13

*Payne v. Elliot,* 54 Cal. 339 (1880)……………………………………………………4

*Reese v. Wal-Mart Stores, Inc.* 73 Cal.App.4th 1225, *1237-1238, 87 Cal.Rptr.2d 346,**355 (Cal.App. 3 Dist.,1999)……………………………………………………9

*SEC v. Cross Financial Services, Inc.,* 908 F.Supp. 718, 734 (C.D.Cal.1995) ………9

*Sharpe v. American Tel. & Tel. Co*., 66 F.3d 1045 (9th Cir. 1995)……………………13

*Shenandoah Associates Ltd. Partnership v. Tirana*, 182 F.Supp.2d 14 (2001)……….7

*Silvers v. Silvers*, 999 P.2d 786 (Alaska, 2000)…………………………………………5, 6

*Stewart v. Chevron Chemical Co.*, 111 Wash.2d 609, 762 P.2d 1143 (1988)…………14

*Vockner v. Erickson,* 712 P.2d 379, 381 (Alaska, 1986). ………………………..........13

*Wien Air Alaska v. Bubbel,* 723 P.2d 627, 631 ftn. 4 (Alaska, 1986)…………………5

**Statutes**

AWHA §AS 23.05.080……………………………………………………………………14

AWHA § AS 23.10.100 ……………………………………………………… 14

AWHA § 23.10.135……………………………………………………………………14

**Treatises**

*Restatement (Second) of Torts* § 222A(2)(b), (c), and (f)………………………………. 6


*Restatement (Second) of Torts* § 226 (1965)………………………………………………… 5

iv

## I.    INTRODUCTION AND PROCEDURAL BACKGROUND

On September 12, 2005, this Court granted the motion of Defendants Wal-Mart Stores, Inc. and Sam's West, Inc. (collectively, "Wal-Mart") to dismiss Plaintiff's claims of conversion and unjust enrichment, while denying the remainder of Defendants' motion in regard to the applicable statute of limitations.  Docket No. 28, Order.  The dismissal was without prejudice.  On December 15, 2005, the Court granted a stipulated order for leave to file the First Amended Complaint.  Docket No. 29, 30.

The First Class Action Amended Complaint ("FAC") expanded the allegations of fact, restated the claims for violation of the Alaska Wage and Hour Act ("AWHA"), conversion and unjust enrichment and added new claims for breach of contract and breach of the covenant of good faith and fair dealing.  Wal-Mart now seeks dismissal of the claims of conversion and unjust enrichment, as well as dismissal of certain factual components of the AWHA and contract claims.  Wal-Mart still insists that this case is merely a wage and hour dispute.

Wal-Mart ignores allegations throughout the First Amended Complaint that Wal-Mart secretly tampered with the payroll records of its hourly employees in order to make unauthorized reductions in the amounts of time recorded.  FAC, ¶¶ 21, 31, 32, 34.  Such despicable conduct, consisting of the intentional theft of the electronic records entitling hourly employees to receive their paltry wages for the time that they worked, committed by one of the world's wealthiest corporations, could support an award of punitive damages and/or an order that Wal-Mart disgorge all profits obtained from this practice, but such damage awards can only be made if the claims of conversion and unjust enrichment are allowed to stand.

Defendants' motion also seeks dismissal of allegations that Wal-Mart violated provisions of the AWHA by failing to maintain accurate records of employee hours and that the company policies contained in the Wal-Mart Employee Handbook requiring payment for time worked do not constitute terms of employment.  These extraordinary requests are without legal or logical basis and should be denied.

1

## II.     NO CLAIMS OR ALLEGATIONS SHOULD BE DISMISSED

The First Amended Class Action Complaint contains allegations that Wal-Mart made a practice of increasing its profits at the expense of its hourly employees, whose recorded hours were reduced secretly by Wal-Mart after those hours were entered into the payroll system. FAC, ¶¶ 2, 64-66. When deciding a motion to dismiss, the court must accept the facts alleged in the complaint as true. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988). In addition, as Defendants point out, inferences from those facts should be made in favor of the non-moving party. *Adams v. Johnson,* 355 F.3d 1179, 1183 (9ᵗʰ Cir. 2004). The facts alleged in the First Amended Complaint squarely support each cause of action.

## A.     The Claim of Conversion Is Well Founded

The Court previously dismissed Plaintiff's cause of action for conversion because the claim appeared to consist of nothing more than a claim for unpaid wages, but Plaintiff was invited to demonstrate otherwise. Docket No. 28, Order, p. 2. The First Amended Complaint alleges wrongful conduct that goes beyond mere failure to pay earned wages. The Complaint alleges that each period of work recorded by hourly employees in Wal-Mart's electronic payroll system represented an employee's right to receive corresponding units of compensation and that Wal-Mart secretly tampered with its payroll records to reduce or eradicate those recorded periods of work. FAC, ¶¶ 21, 32, 34, 53-55. The result of Wal-Mart's tampering was that a four hour shift might be reduced to three hours or, as frequently happened, reduced to one minute. FAC, ¶ 34.

Each time that Plaintiff and Class members recorded their hours in Wal-Mart's payroll system, an electronic record was created and that record represented the right to be paid a specific amount for the units of time worked. Each such record represented a property right of the employee who created it. Wal-Mart then secretly altered those time records, without authorization from the affected employees, for the wrongful purpose of reducing the amount of compensable time. FAC, ¶ 55. The conversion occurred each time that Wal-Mart falsified its employees' time records, and the damages that resulted from the conversion were that workers were not paid for time that they worked and recorded but Wal-Mart subsequently eliminated.

2

The claim of conversion is founded upon Wal-Mart's alteration of its employees' time records for the wrongful purpose of destroying data that entitled those employees to receive payment for hours that they worked.  Unlike Plaintiff's cause of action for violation of the Alaska Wage and Hour Act, in which Plaintiff alleges that Wal-Mart failed to pay wages and overtime for all time worked, the conversion claim is founded upon specific, intentional wrongdoing that involved the destruction and falsification of employees' time records for the purpose of cheating workers out of their earnings, conduct so reprehensible as to support an award of punitive damages.  FAC, ¶ 59.  Punitive damages may be awarded for the tort of conversion where there is "evidence of ill will or evil intent to injure plaintiff".  *Alyeska Pipeline Service Co. v. O'Kelley*, 645 P.2d 767, 774 (Alaska 1982).  The facts alleged in the Complaint would provide abundant support for a finding of ill will and evil intent to injure Plaintiff and the Class.

1.    **Electronic Data May Be the Subject of a Conversion Claim**

Wal-Mart employees had a property interest in each period of work that they recorded in the Wal-Mart payroll system, and the conversion occurred each time that Wal-Mart wrongfully altered a payroll record.  The fact that the records existed only in electronic form does not make the theft of them less actionable.  The law of conversion has kept pace with technology.  For example, a district court in California recently upheld a conversion claim by a satellite television broadcaster to recover for unauthorized interception of transmissions.  *DIRECTV, Inc. v. Pahnke*, 2005 WL 3453823 (E.D.Cal., 2005).

> "Conversion is defined as any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his or her rights therein.  [Citations.]  In order to establish a claim for conversion, the plaintiff must show (a) the right to possession of the personal property, (b) conversion by wrongful act or disposition of the property, and (c) damages."  *DIRECTV, Inc.*, 2005 WL 3453823, at *6.

The *DIRECTV* court held that "personal property" protected by the common law tort of conversion includes intangible property and, in that case, the property consisted of "a right to distribute programming via satellite broadcast".  *Ibid.*

3

The Ninth Circuit, in *Kremen v. Cohen*, 337 F.3d 1024 (2003), rejected the argument that property that exists only in electronically recorded form cannot be the subject of a conversion claim.

> "That it is stored in electronic form rather than on ink and paper is immaterial. [Citations.] It would be a curious jurisprudence that turned on the existence of a *paper* document rather than an electronic one. Torching a company's file room would then be conversion while hacking into its mainframe and deleting its data would not. That is not the law, at least not in California." *Kremen,* at 1034. (Emphasis in original.)

The property allegedly converted in *Kremen* was an internet domain name, sex.com (a lucrative property in the business of internet pornography), and the trial court held that this property was too intangible to support a claim of conversion. *Kremen,* at 1030. The Ninth Circuit reversed, with a witty and comprehensive examination of the evolution of the law of conversion from the time that it applied only to tangible chattels, concluding that the requirement of a tangible embodiment of the property right has been abandoned in virtually every jurisdiction. *Ibid.*

The court in *Kremen* noted that the California Supreme Court abandoned the tangibility requirement over one hundred years ago, in *Payne v. Elliot,* 54 Cal. 339 (1880), where the court considered whether shares in a corporation, as opposed to the share certificates, could be converted, "It held that they could, reasoning: '[T]he action no longer exists as it did at common law, but has been developed into a remedy for the conversion of *every species of personal property.*'" *Payne,* at 341; *Kremen,* at 1031. (Emphasis in *Kremen.*) There is no longer any requirement in the Ninth Circuit that property subject to a claim of conversion be embodied in any tangible form, because such a requirement, "cannot be squared with a jurisprudence that recognizes conversion of music recordings, radio shows, customer lists, regulatory filings, confidential information and even domain names." *Kremen,* at 1033.

In *MTC Electronic Technologies Co., Ltd. v. Leung*, 889 F.Supp. 396 (C.D.Cal. 1995) a district court in California denied a motion to dismiss a conversion claim founded upon allegations that the defendants allegedly obtained stock options in the plaintiff corporation by fraud and sold them, causing losses to the plaintiff and its shareholders. *Id.,* at 403. The court held that the tort of conversion can be founded upon wrongful

4

interference with the right to property, "No physical taking is required; instead, any wrongful interference will suffice. [Citation.] Further, any unauthorized sale or transfer of another's property constitutes conversion. [Citation.]" *Ibid.* The same reasoning is applicable in Alaska.

> "Conversion can occur when one 'intentionally destroys a chattel or so materially alters its physical condition as to change its identity or character.' [Restatement (Second) of Torts § 226 (1965). [¶]…The Restatement also advocates that a plaintiff entitled to future possession of a chattel may maintain an action for conversion….In light of these considerations, we adopt the view that a future possessory interest is sufficient for a plaintiff to maintain an action for conversion." *McKibben v. Mohawk Oil Co., Ltd.*, 667 P.2d 1223, 1228-1229 (Alaska 1983).[1]

The electronic records of time worked were a valuable property right of each hourly Wal-Mart employee, entitling them to receive a specific amount of compensation at the next pay day, and the theft of that property is the proper subject of a claim for conversion. Unlike the facts alleged in any of the cases relied upon by Defendants, Plaintiff alleges that he and Class members were deprived of payment for time they worked because of their employer's surreptitious, dishonest alteration of their electronic time records.

## 2.    Defendants' Authority Does Not Warrant Dismissal

The legal arguments and caselaw relied upon by Defendants in this portion of their motion are identical to their previous motion and do not deal with the fundamental allegations that Plaintiff and Class members had a property right in the periods of time recorded in the Wal-Mart payroll system and that Wal-Mart wrongfully interfered with that property right when it tampered with those payroll records. Instead, Defendants accuse Plaintiff of "obscuring the nature of" a simple wage and hour claim. Motion, p. 3. To the contrary, the present Complaint contains allegations of misconduct that go far beyond the failure to pay wages and give rise to the tort of conversion, with the possibility that punitive damages may be awarded.

The criteria for a claim of conversion in Alaska are reiterated in *Silvers v. Silvers*, 999 P.2d 786 (Alaska 2000), a case cited by Defendants.

---

[1] Overruled on other grounds by *Wien Air Alaska v. Bubbel,* 723 P.2d 627, 631 ftn. 4 (Alaska 1986).

*McFarlin v. Walmart et al.*
Case No. 3 AN-05-0094 CV

> "To establish a claim for conversion, the plaintiff must prove (1) that she had a possessory interest in the property; (2) that the defendant interfered with the plaintiff's right to possess the property; (3) that the defendant intended to interfere with plaintiff's possession; and (4) that the defendant's act was the legal cause of the plaintiff's loss of the property. [Citation.]" *Silvers*, at 793.

All of those criteria are satisfied here.  Plaintiff and Class members had a possessory interest in the time recorded in their payroll records; Wal-Mart interfered with its employees' right to receive wages from those payroll records by eradicating and falsifying the recorded hours; Wal-Mart altered payroll records intentionally to remove some of the time recorded by its employees; and the altered payroll records reflected less than all hours worked, resulting in payment of less than all wages earned.

*Alaska Continental, Inc. v. Trickey*, 933 P.2d 528 (Alaska 1997), relied upon by Defendants, is inapposite.  In that case, the claim of conversion was dismissed because the property allegedly converted was merely being held until conflicting claims could be resolved.  *Id.,* at 536.

> "Under these circumstances, we hold that a conversion did not occur.  The *Restatement of Torts* looks to the following factors in determining whether an actor has converted another's chattel: the actor's intent to assert a right in fact inconsistent with the other's right of control; the actor's good faith; and the inconvenience and expense caused to the other party.  *Restatement (Second) of Torts* § 222A(2)(b), (c), and (f)." *Alaska Continental, Inc.,* at 536.

The allegations in the present Complaint fulfill all of the foregoing criteria from the *Restatement*.  As alleged in the Complaint, Wal-Mart intentionally falsified time records in order to eradicate its employees' right to receive payment for time worked; Wal-Mart did so for the despicable purpose of cheating its employees out of earned wages; and the resulting inconvenience and expense for Wal-Mart employees was two-fold, in that individual employee suffered the theft of earned wages and the systematic theft could only be detected by analyzing thousands of payroll records, an insurmountable task for the individual employee.  FAC, ¶¶ 30-31.

Defendants rely also upon *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702 (Alaska 2003), a case that involved the breach of a sales contract for a gold dredge.  *Id.,* at 717.  The court upheld dismissal of the conversion claim, "These claims concern

*McFarlin v. Walmart et al.*
Case No. 3 AN-05-0094 CV

contractual breaches and disputes and thus 'sound in contract, rather than tort.' [Citation.]"  *Ibid.*  Wal-Mart's alteration of payroll records, however, goes beyond breach of the contract to pay its employees their wages.

*Shenandoah Associates Ltd. Partnership v. Tirana*, 182 F.Supp.2d 14 (2001), relied upon by Defendants, is a district court decision from the District of Columbia, applying Virginia law to a case in which funds from real estate investment trusts were allegedly diverted to pay legal fees owed to the trusts' attorney.  *Id.,* at 18.  The court held that plaintiffs' breach of contract claim provided an adequate remedy and that plaintiffs lacked a sufficiently tangible interest in the funds allegedly converted.

> "Under Virginia law, 'a cause of action for conversion applies only to tangible property.'  [Citation.]  Virginia case law also indicates, however, that claims for conversion can extend to intangible property rights arising from or merged with documents such as stock certificates, promissory notes, checks or bonds.  [Citations.]  There is no precedent, however, for allowing conversion claims for *undocumented* intangible property rights. … Unlike stock certificates, promissory notes or bonds, all of which carry expectation rights, the operating accounts and trust funds in the present suit hold no independent value."  *Id.,* at 22-23.  (Emphasis in original.)

As discussed above, the law of Virginia is in conflict with the law of the Ninth Circuit, in that Virginia limits claims of conversion to tangible property.  *Cf.*, *Kremen v. Cohen*, *supra,* 337 F.3d at 1033.  "Without the negotiable instrument as a link, the Virginia courts have been reluctant to extend conversion claims to intangible property rights."  *Shenandoah Associates Ltd. Partnership*, at 23.  Even under the analysis in *Shenandoah*, however, the conversion claim in the present case would be sustained because, as alleged in the Complaint, the converted time records carried "expectation rights" that the employee would be paid by Wal-Mart for the time recorded.

Defendants also cite *Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200 (Del. 1988), a case decided in Delaware state court and inapplicable to the facts in the present Complaint.  There, the plaintiff alleged that the defendant stock brokerage, "converted moneys through the accrual of interest on a 'float'."  *Id.,* at 1203.  The court rejected the claim that the interest obtained from the float was converted.

> "Money is subject to conversion only when it can be described or identified as a specific chattel, but not where an indebtedness may be discharged by the payment of money generally.  [Citations.]  The alleged

7

converted property is money, not [e.g.,]…specific stock certificates."
*Goodrich*, at 1203.

The interest accrued on the float by E.F. Hutton Group bears no analogy to the time records of Wal-Mart employees.  The payroll records are a property right, entitling the employee to a specific amount of payment, analogous to stock certificates.  The fact that the time records represented a claim for money does not defeat the conversion cause of action.  "Money can be the subject of an action for conversion if a specific sum capable of identification is involved."  *Farmers Insurance Exchange v. Zerin,* 53 Cal.App.4th 445, 451-452 (1997).

Defendants also rely upon a case from Alabama state court dismissing a claim of conversion where the plaintiff's employer openly withheld part of the plaintiff's paycheck while she was being investigated for stealing that amount from the employer. *McCain v. P.A. Partners Ltd.,* 445 So.2d 271, 272 (Ala. 1984).  The court found that the paycheck was not converted because the plaintiff (appellant) did not have a property interest in the check until it was delivered.

> "Checks remain the property of the drawer unless and until there is a valid delivery and acceptance by the payee.  [Citation.]  Appellee never delivered the payroll check to appellant, and, therefore, appellant did not acquire a general or special property right in the check. The check remained the property of appellee, and appellant only had an incorporeal right to a certain sum or to the collection of a debt."  *McCain*, at 273.

The arcane legal reasoning in *McCain* has no application in the Ninth Circuit, and the case is additionally inapposite because the right of Plaintiff and Class members to payment was not "incorporeal" but was instead embodied in payroll records that documented each specific period of time worked.

The cause of action for conversion, with the remedy of punitive damages, should not be dismissed.

**B.    The Claim of Unjust Enrichment Is Not Redundant**

The First Amended Complaint alleges that Wal-Mart greatly reduced its payroll expense and increased its profits by shortchanging its hourly employees.  FAC, ¶ 62. Plaintiff seeks disgorgement of all such wrongfully obtained profits.  FAC, ¶¶ 64, 67.

*McFarlin v. Walmart et al.*
Case No. 3 AN-05-0094 CV

One of the benefits that accrue from class actions is that the Court and the public have a means to "avoid unjust enrichment of a wrongdoer." *Reese v. Wal-Mart Stores, Inc.*, 73 Cal.App.4th 1225, 1238 (1999). If Plaintiff is successful in this case, individual members of the Class will be entitled to make claims for unpaid wages and penalties, but inevitably some Class members will not make claims. Some Class members probably will not receive notice, and some will not bother to act. To allow Wal-Mart to keep its employees' unclaimed back wages would reward Wal-Mart for its despicable conduct. Only disgorgement, either into a fund for the benefit of Wal-Mart's workers or otherwise as the Court may direct, will prevent Wal-Mart from retaining its ill gotten gains.

> "The remedy of disgorgement of wrongfully obtained profits, beyond restitution to individual class members, into a "fluid recovery" may be 'essential to ensure that the policies of disgorgement or deterrence are realized'. [Citation.]" *Granberry v. Islay Investments*, 9 Cal.4th 738, 760, 889 P.2d 970, 984 (Cal. 1995).

The scope of the disgorgement remedy is sufficiently broad to encompass all gains, including prejudgment interest, flowing from the illegal activity. *SEC v. Cross Financial Services, Inc.,* 908 F.Supp. 718, 734 (C.D.Cal. 1995).

Only the equitable remedy of disgorgement will prevent Wal-Mart from retaining the profits that it realized from its wrongful conduct. For that reason, the cause of action for unjust enrichment is not redundant with the other claims in the First Amended Complaint and should not be dismissed.

### C.    Terms of the Employment Contract Are Stated in the Employee Handbook

Plaintiff alleges that Wal-Mart agreed to pay him and Class members for all time worked, in compliance with a basic employment agreement and applicable wage and hour statutes, and that this basic agreement was evidenced and confirmed in Wal-Mart's Employee Handbook. FAC, ¶¶ 69-71. Unlike the cases relied upon by Defendants, where the plaintiff attempted to change a provision of an employment contract by reference to an employee handbook, Plaintiff McFarlin merely references the Wal-Mart Employee Handbook as evidence of Defendants' existing contractual obligation to pay hourly workers for their labor.

9

It is unclear what Defendants' motion seeks to accomplish. Presumably, Wal-Mart does not deny that it was contractually and legally required to pay its employees. Dismissal of the entire breach of contract cause of action, as requested on page 7 of Defendants' motion, is unwarranted because it is beyond dispute that hourly workers performed their jobs for Wal-Mart pursuant to an employment contract. Dismissal of this cause of action "to the extent it relies upon the employee handbook as a basis for the contract or terms of any agreement," as requested on page 6 of the Motion, is unwarranted because the Employee Handbook merely provides confirmation of company policies requiring employees to be paid for all time worked. The Employee Handbook sets forth policies that govern the employment, performance, promotion, compensation and termination of Wal-Mart employees nationwide. Significantly, the Employee Handbook puts employees on notice as to conduct that is unacceptable to Wal-Mart and can lead to the termination of their employment.

Defendants urge this Court to disregard the policies in the Employee Handbook because of a single sentence in the introductory "Welcome" page stating that the Handbook is not a contract. Defendants' Exh. A, p. 6. Defendants rely also upon a similar disclaimer in an acknowledgement form that every new hire is required to sign, and that acknowledgement also contains a statement that the Wal-Mart policies presented in the Handbook "do not constitute terms or conditions of employment." *Id.,* p. 50.

Contrary to this mandatory acknowledgement form, which is adhesionary, the policies presented in the Handbook do, indeed, constitute terms and conditions of employment. Nothing in the Handbook suggests that compliance with Wal-Mart policies is optional or that the policies are mere guidelines. For example, under "General Rules", the Handbook states:

> "These rules…apply to Associates[2] in all divisions. All Associates are expected to be aware of and follow them. …

> 10. Loafing, idleness, sleeping, and excessive personal calls on work time will not be tolerated. Personal long-distance phone calls may not be charged on company phones.

---

[2] In Wal-Mart jargon, hourly employees are referred to as Associates.

10

*McFarlin v. Walmart et al.*
Case No. 3 AN-05-0094 CV

12. Leaving Company property while on the clock, unless on Company business, is strictly prohibited.

13. Associates must not clock in or out for any other Associate. Defendants' Exh. A, pp. 24-25.

Under "Wal-Mart/SAM'S Club Specific Work Rules," the Handbook lists specific conduct that is "not permitted" or "prohibited," such as shopping during work hours. Defendants' Exh. A, p. 25. Under "Attendance," the Handbook states that absence from work for three consecutive days will result in "your voluntary termination." *Id.*, p. 26. Under "Managing Your Time," the Handbook states, "*working off the clock is not only against Wal-Mart policy – it's against the law*. Always clock in when you are working – Always! There are no exceptions." *Id.,* p. 28. (Emphasis added.) Under "Meal and Break Periods," the Handbook states, "Associates will be provided break and meal periods during their scheduled work shift. Associates are paid for up to two break periods per work shift. No associate should work over six hours without taking at least a 30-minute meal period." *Id.,* p. 29. Similarly, under "Work Time," the Handbook states that Associates are strictly prohibited from engaging in any non-work activity during work hours and from distributing literature at any time on store premises. *Id.,* p. 30.

1.    **The Disclaimer Did Not Destroy Employee's Contract Rights**

Throughout its Handbook, Wal-Mart firmly reserves the right to fire employees for breaking its rules, but in this motion Wal-Mart seemingly asserts that the Handbook reserves such rights unilaterally, in that Wal-Mart can enforce its rules against employees but the rules do not give employees any contractual rights. The law in Alaska does not support such a one-sided employment contract.

In *Jones v. Central Peninsula General Hospital,* 779 P.2d 783 (Alaska 1989), the Alaska Supreme Court found that an employee manual that was virtually identical to Wal-Mart's was incorporated into the plaintiff's otherwise at-will employment agreement, regardless of a disclaimer that the manual was not a contract, "As we accept the theory that an employer's notification to an employee of a policy manual constitutes an 'offer,' which is accepted by the employee's continued performance, we conclude that

11

the…manual was incorporated into Jones' employment contract. [Citations.]" *Jones,* 779 P.2d at 787, ftn. 2.

> "In reaching this conclusion we reject [defendant's] argument that its…manual did not modify Jones' at-will employment status since the manual contained a disclaimer provision.  In this regard the…manual reads as follows: 'The purpose of this manual is to provide information to all…employees.  It is not a contract of employment nor is it incorporated in any contract of employment between the [defendant] and any employee.'" *Jones,* at 787.

Among the factors relied upon by the *Jones* court in finding that the disclaimer was insufficient to prevent the employee manual from serving as a contract was the presence of explicit policies and rules throughout the manual.

> "The one-sentence disclaimer, followed by 85 pages of detailed text covering policies, rules, regulations, and definitions, does not unambiguously and conspicuously inform the employee that the manual is not part of the employee's contract of employment.  [ftn. 4] The…manual, under the heading of 'policies,' in part discusses such topics as probationary periods of employment, …promotions, transfers, compensation, leave, voluntary resignations, involuntary terminations, and terminations for cause.  Under the heading of 'rules,' the manual addresses such matters as…professional conduct required of employees, smoking, employee appearance, theft and fraud, punctuality, attendance, and hours worked." *Jones,* at 788.

The same types of policies and rules are found in the Wal-Mart Employee Handbook.  While the *Jones* court relied upon the employee manual to transform at-will employment into a contract requiring good cause for discharge, here Plaintiff McFarlin merely references the Employee Handbook to show that Wal-Mart was contractually obligated to pay its hourly employees for all time worked, as required by law.  FAC, ¶ 69. In *Jones*, the employee manual altered the nature of the employment contract, while in the present case the Employee Handbook merely evidences the undisputed right of Class members to be paid for their work.

In *Moreau v. Air France,* 356 F.3d 942 (9th Cir. 2004), a wrongful termination case decided under California law, the Ninth Circuit held that the effect of even "a prominent disclaimer" in an employee manual is a triable question of fact, " 'When an employer promulgates formal personnel policies and procedures in handbooks, manuals and memoranda disseminated to employees, a strong inference may arise that the

12

employer intended workers to rely on these policies as terms and conditions of their employment.' [Citation.]" *Moreau,* at 953-954.

## 2.     Enforcement of the Disclaimer Would Be Unconscionable

To the extent that Wal-Mart's mandatory acknowledgement form is intended to divest the employee of contractual rights, including the right to be paid for labor, while affirming Wal-Mart's right to terminate the employee for various types of misconduct, the acknowledgement form is adhesionary and should be rejected as unconscionable. The form is adhesionary because it is presented by Wal-Mart on a take-it-or-leave-it basis to people seeking entry level employment, people who have no bargaining power and no choice but to sign the form in order to obtain employment. *Burgess Construction Co. v. State*, 614 P.2d 1380, 1383 (Alaska, 1980).

> "We have stated that '[u]nconscionability may exist where [the] circumstances indicate a vast disparity of bargaining power coupled with terms unreasonably favorable to the stronger party.' [Citations.] 'Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'." *OK Lumber Co., Inc. v. Alaska R.R. Corp*., 123 P.3d 1076, 1081, ftn. 17 (Alaska 2005).

The acknowledgement form is unconscionable and, therefore, unenforceable to the extent that it attempts to relinquish the employee rights that are stated in the Handbook.

> "If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract...." *Vockner v. Erickson,* 712 P.2d 379, 381 (Alaska 1986).

## 3.     Defendants' Authority Is Inapposite

The cases relied upon by Wal-Mart all deal with the law of Washington state, rather than Alaska, and are factually inapposite. *Sharpe v. American Tel. & Tel. Co*., 66 F.3d 1045 (9th Cir. 1995), rejected a claim by a disabled employee that the guidelines in AT&T's Equal Employment Opportunity and Affirmative Action Handbook constituted legally enforceable promises as to the specific accommodations for disability that the employer would make in specific situations. *Sharpe*, at 1051. Unlike AT&T's guidelines for accommodating disabled employees, the policies in the Wal-Mart Handbook regarding payment for hours worked are specific and unequivocal.

Similarly unavailing is *Stewart v. Chevron Chemical Co.*, 111 Wash.2d 609, 762 P.2d 1143 (1988).  There, in a wrongful termination case, the Washington court found that the layoff provision in an employee manual upon which the plaintiff relied was merely discretionary, unlike other provisions that were mandatory.

> "Chevron's layoff policy states only that management 'should' consider performance, experience and length of service in determining the sequence of layoffs.  This does not create an obligation that Chevron will or must consider all three factors.  'Should' may be interpreted as discretionary, indicating merely a recommendation or preference.  [Citations.] Throughout other portions of the manual Chevron used the terms 'shall', 'will' and 'must', but in the layoff provision used 'should', indicating Chevron intended that the provision be advisory."  *Stewart,* 111 Wash.2d at 613-614, 762 P.2d at 1145-1146.

The provisions of the Wal-Mart Employee manual relating to pay for hourly employment, such as the requirement that employees be clocked in while working, the prohibition against off-the-clock work and the requirement that employees take rest and meal breaks, are presented as mandatory, not discretionary.  There is no reason in law or logic why the Court should dismiss Plaintiff's basic contract claims that are evidenced by the Employee Handbook.

**D.     The Alleged Record Keeping Violation Is Relevant**

Defendants seek dismissal of allegations that Wal-Mart failed to record accurately the time worked by hourly employees, in violation of AWHA §§ AS 23.10.100 and 23.10.135, as well as AS 23.05.080.  FAC, ¶ 47.  Defendants maintain that these allegations should be dismissed because violation of the record keeping statutes does not support a private right of action.

Allegations that Wal-Mart violated the record keeping statutes not only demonstrate misconduct.  Where an employer violates the record keeping statutes and the employee makes an initial showing of underpayment, the "burden then shifts to the employer to come forward with evidence of the precise amount of work performed, or evidence sufficient to negate the reasonableness of the inference to be drawn from the employee's evidence.  [Citations.]"  *Alaska International Industries, Inc. v. Musarra*, 602 P.2d 1240, 1248 (Alaska 1979).

14

"When an employer fails to keep records, an employee may prove her claim if she presents sufficient evidence from which the court may draw a 'just and reasonable inference.' [Citation.] If the employee meets this minimum threshold, the burden shifts to the employer to 'come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.' [Citation.]" *Barios v. Brooks Range Supply, Inc.*, 26 P.3d 1082, 1086 (Alaska 2001).

Burden shifting based upon Wal-Mart's failure to keep accurate employee time records is appropriate here. The allegations that Wal-Mart violated the record keeping statutes are appropriate and should not be dismissed.

## III.    <u>CONCLUSION</u>

The First Amended Complaint alleges facts sufficient to support the causes of action for conversion and unjust enrichment, and the remedies of punitive damages and disgorgement will not be available if these claims are dismissed. The theft of employees' time records for the despicable purpose of cheating hourly workers out of their meager wages and thereby contributing to the massive wealth of Wal-Mart, as alleged in the Complaint, warrants the imposition of such severe remedies. Defendants' motion to dismiss some of the allegations in the causes of action for breach of contract and violation of the AWHA makes no sense and is lacking in legal support.

For all these reasons, Plaintiff requests that Defendants' motion be denied in full.

Dated:  January 25, 2006                    CHOATE LAW FIRM LLC


                                            /s/ Mark C. Choate

                                            By: _____

<u>Certificate of Service</u>
I hereby Certify that a true and correct copy of the foregoing
document was served on counsel of record listed below via
Electronic Delivery and U.S. mail on this 25th day of January, 2006.

William A. Earnhart, Esq.
Lane Powell LLC
301 W. Northern Lights Blvd. # 301
Anchorage, AK  99503-2648
Telephone: 907-277-9511
Facsimile: 907-276-2631

*McFarlin v. Walmart et al.*
Case No. 3 AN-05-0094 CV

Rudy Englund, Esq.
Lane Powell, LLC
1420 Fifth Avenue #4100
Seattle, WA  98101-2338
Telephone: (206) 233-7000
Facsimile:  (206) 233-7107

Robert J. Bonsignore, Esq.
Bonsignore & Brewer
23 Forest Street
Medford, MA  02155-3820
Telephone:  781-391-9400
Facsimile:  781-391-9496

  /s/ Mark C. Choate
_____

16